NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RODNEY DEAN,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civil Action No. 17-5082 (JLL)<br><br>OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court upon the appeal of Rodney Dean from the final decision of the Commissioner of Social Security ("the Commissioner") upholding Administrative Law Judge ("ALJ") Nycole Watson's denial of Plaintiff's application for a period of disability and disability insurance benefits ("DIBs") under Title II of the Social Security Act ("the Act"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). The Court has reviewed the parties' submissions and, for the following reasons, affirms the ALJ's decision.

### I.     BACKGROUND[1]

#### A. Initial Filing and the Hearings

On March 31, 2014, Plaintiff "protectively filed" for a period of disability and DIBs, alleging disability which began on March 14, 2014. (R. at 27). Plaintiff's alleged disability related to chronic lower back pain stemming from a back injury, which required him to previously undergo a spinal fusion. (R. at 30). Plaintiff's claim for disability also related to several alleged mental

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 6.

impairments. (R. at 31). At the onset of his alleged disabilities, Plaintiff was about 40 years old. (R. at 40). Plaintiff's claims were denied initially on July 23, 2014, and again upon reconsideration on January 28, 2015. (R. at 27). Upon his written request, Plaintiff received a hearing on April 19, 2016 where he and a vocational expert ("VE"), Louis P. Szollosy, testified. (R. at 27). The ALJ issued an unfavorable decision on August 31, 2016, but subsequently granted Plaintiff's motion to vacate the decision and provide Plaintiff with a new hearing in light of post-hearing consultative examinations performed by Dr. Mintzer and Dr. Cornejo. (R. at 27). The ALJ then held a supplemental hearing on December 19, 2016 via video conference, where a second VE, Darren Wright, appeared by telephone but did not testify. (R. at 27).

**B. The ALJ's Decision**

Following the supplemental hearing, the ALJ determined on January 5, 2017 that Plaintiff was ineligible for payment of DIBs as a result of the five step inquiry defined in more detail below *infra* III.A. (R. at 29).

1. <u>Steps One and Two</u>

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of March 14, 2014. (R. at 30). At Step Two, the ALJ found that Plaintiff had the following severe impairments: (i) residual effects of lumbar fusion; (ii) chronic back pain; (iii) mild major depressive disorder; and (iv) generalized anxiety disorder. (R. at 30). In reaching this decision, the ALJ referenced several examinations and treatment options that Plaintiff underwent for his back pain. (R. at 31). Additionally, the ALJ cited to Plaintiff's history of seeking medication for anxiety and his diagnosis of depression. (R. at 31). Though one doctor, Dr. Mintzer, diagnosed Plaintiff with PTSD, Panic Disorder, and/or Schizotypal Disorder, the ALJ found that these diagnoses were predominantly based on Plaintiff's subjective reports and did not

2

"cause more than minimal functional limitations and negatively affect [Plaintiff's] ability to perform the normal demands of work." (R. at 32).

2. Step Three

Despite finding several of Plaintiff's alleged impairments to be severe, the ALJ concluded at Step Three that none of these impairments met or medically equaled the severity of a listed impairment under 20 C.F.R. § 404, particularly Listings 1.04, 12.04, and 12.06. (R. at 33). According to the ALJ, there was no evidence in the record that Plaintiff's back pain and related impairments were accompanied by among other things a "compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by a neuro-anatomic distribution of pain with functional loss." (R. at 33). The ALJ explained that functional loss refers to an inability to ambulate effectively, requiring "insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." (R. at 33).

For Plaintiff's mental conditions, the ALJ noted that the medical evidence failed to demonstrate that Plaintiff suffered from restrictions to his daily activities or functioning. (R. at 33). The ALJ stated that Plaintiff's claims of social anxiety were undermined in part because Plaintiff: (i) is routinely described "as pleasant, alert and oriented" in his treatment records; (ii) lives with his mother and four of his children; and (iii) is self-sufficient in regard to grooming, hygiene, and daily tasks such as driving and grocery shopping. (R. at 34). The ALJ further found that Plaintiff's claims were undermined by tests of his blood and urine which showed that he had not taken the Xanax he was prescribed, despite his claim to the contrary. (R. at 35).

3. Residual Functional Capacity ("RFC")

Based on Plaintiff's symptoms and the opinion evidence in the record, the ALJ then found that Plaintiff had the RFC "to perform a range of sedentary work." (R. at 35). The ALJ further found that:

> [Plaintiff] is able to occasionally lift 10 pounds and frequently lift and/or carry 10 pounds. He is able to stand and/or walk for a total of about two hours in an eight-hour workday. He is able to sit for about six hours in an eight-hour workday. He will need the ability to change positions every 30 minutes for five minutes. He is able to climb ramps or stairs occasionally but must never climb ladders, ropes or scaffolds. He must avoid crouching, kneeling or crawling. He is limited to frequent overhead reaching bilaterally. He is able to do occasional balancing on level surfaces. He must avoid concentrated exposure to hazards such as moving machinery and unprotected heights. He is limited to frequent handling and fingering. He must ambulate with a cane. He is able to understand, carry out and remember simple, routine tasks and repetitive tasks involving only simple, work-related decisions. He has the ability to adapt to routine work place changes. He is limited to tasks where co-workers and public contact is casual and superficial, where supervision is direct and non-confrontational, and where changes in the workplace are infrequent and gradually introduced.

(R. at 35).

In reaching this assessment of Plaintiff's RFC, the ALJ first discussed Plaintiff's testimony regarding his physical and mental limitations, including but not limited to his social anxiety, stabbing back pain, and numbness and weakness in his back, shoulder, and knee. (R. at 36). The ALJ found, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 37). The ALJ noted that Plaintiff's claims of anxiety, panic attacks, and inability to be around others seemed diminished by the fact that: (i) he was not taking his Xanax prescription, which was evidenced by the lack of Xanax in his urine and his inability to offer a plausible alternative explanation for same; (ii) he had only recently begun mental health treatment;

4

and (iii) the amount of interaction he had with his family appeared to be significant for someone who claims that he cannot be around people. (R. at 36–37).

As for Plaintiff's physical impairments, the ALJ noted that Plaintiff had normal gait, motor strength, muscle tone, and ranges of motion three years after the spinal fusion. (R. at 37). The ALJ referred to several medical reports in the record which supported his assessment, including but not limited to a 2016 exam where Plaintiff: (i) brought a cane but did not use it; (ii) was able to comfortably sit and lie down; and (iii) was able to get on and off the exam table. (R. at 37–38). The ALJ also noted that Plaintiff's complaint of debilitating back pain was undercut by the assertion of his representative at the supplemental hearing, who claimed that Plaintiff uses a transcutaneous electrical nerve stimulation ("TENs") unit three times daily. (R. at 38). The frequent use of such device indicated to the ALJ that Plaintiff was able to use same without pain and achieved some benefit from it. (R. at 38). To the extent that some of the medical opinions in the record indicated that Plaintiff cannot stand, sit, or walk for more than fifteen minutes at a time, such as that of Dr. Smith, the ALJ gave said opinions diminished credibility based on the fact that several years had passed since these doctors examined Plaintiff. (R. at 39).

The ALJ further stated that the RFC accounted for Plaintiff's complaints to the extent that they were supported by the record. (R. at 40). For example, Plaintiff's physical complaints were accommodated by assigning him to sedentary work with limitations on bending, turning, and walking extensively. (R. at 39). The ALJ also noted that the RFC incorporated Plaintiff's use of a cane. (R. at 38). To accommodate for Plaintiff's depression and anxiety, the ALJ limited his work to routine tasks with only occasional and casual contact with co-workers, supervisors, and the public. (R. at 39–40).

4. Steps Four and Five

Given the above RFC analysis, the ALJ concluded at Step Four that Plaintiff could not perform his past relevant work as a Senior Water Sewer Operator. (R. at 40). Nevertheless, at Step Five, the ALJ concluded that there is a significant number of jobs in the national economy that Plaintiff can perform based on his age, work experience, education, and RFC. (R. at 40–41). The ALJ's conclusion was also based on the testimony of the VE, who stated that Plaintiff would be able to perform the requirements of a sorter, stuffer, or information clerk despite the fact that his exertional and mental limitations eroded the base number of available unskilled sedentary jobs. (R. at 41). The VE further testified that there was a significant amount of sorter, stuffer, and information clerk jobs that existed in the national economy. (R. at 41). The ALJ found that this testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), and therefore concluded that Plaintiff was not disabled under the Act. (R. at 41).

**C. Plaintiff's Appeal**

Plaintiff subsequently filed a Request for Review of the ALJ's decision with the Appeals Council. (R. at 1–6, 337–38). On May 17, 2017, the Appeals Council denied Plaintiff's request. (R. at 1–6). Accordingly, on July 12, 2017, Plaintiff filed this appeal of the ALJ's decision. (*See* ECF No. 1). In this appeal, Plaintiff alleges that the ALJ erred at Step Three, Step Five, and in the RFC analysis. (*See generally* ECF No. 9).

## II. STANDARD OF REVIEW

This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). Consequently, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III. ANALYSIS

#### A. The Five Step Process

Under the Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled, which the Third Circuit has summarized as follows:

> In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

> In <u>Step Two</u>, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In <u>Step Three</u>, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> <u>Step Four</u> requires the ALJ to consider whether the claimant retains the [RFC] to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final step [(<u>Step Five</u>)]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118–19 (3d Cir. 2000) (formatting added).

"The claimant bears the burden of proof for steps one, two, and four," and the Commissioner bears the burden of proof at the fifth step. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither party bears the burden of proof for Step Three, considering same "involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 n.5 (1987)). As mentioned above, Plaintiff in this appeal is challenging the ALJ's conclusions at Step Three, RFC, and Step Five.

**B. Step Three**

At Step Three, an impairment qualifies as a listed impairment if it meets all, not merely some, of the specified medical criteria for that listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff only raises arguments in regard to Listing 1.04A and C, which entail spine or spinal cord disorders with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P., app. 1, § 1.04.

Plaintiff claims that the ALJ merely recited the standard of Listing 1.04 and failed to provide substantial evidence in concluding that Plaintiff's back pain did not meet said listing. The Court disagrees with this characterization of the ALJ's decision, and instead finds that the ALJ sufficiently explained that Plaintiff's impairments failed to meet a necessary element of each sub-listing. For Listing 1.04A, the ALJ specifically noted that there was no evidence in the record of nerve root compression. (R. at 33). For Listing 1.04C, the ALJ noted that there was no evidence in the record of functional loss, which referred to an inability to ambulate effectively. (R. at 33). As the ALJ correctly explained, an inability to ambulate effectively requires "the use of a hand-held assistive device(s) that limits the functioning of *both upper extremities*," (R. at 33 (emphasis

9

added)). *See* 20 C.F.R. pt. 404, subpt. P, Appx 1, § 1.00B(2) (stating the same definition for inability to ambulate effectively). Though Plaintiff does utilize a cane, which the ALJ later mentioned in her opinion, (R. at 36–37), same does not meet the definition of a hand-held device that limits functioning of *both* hands. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (finding that "the ALJ's decision, *read as a whole*, illustrate[d] that the ALJ considered the appropriate factors in reaching the conclusion that [the plaintiff] did not meet the requirements for any listing.") (emphasis added). Moreover, Plaintiff does not point to any evidence omitted from the ALJ's decision showing nerve root compression or the use of a hand-held device limiting the functioning of both hands, (*see generally* ECF No. 9). *See Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146 (3d Cir. 2007) (finding it significant that the plaintiff failed to indicate any medical evidence ignored by the ALJ in the Step Three determination). Therefore, the Court concludes that the ALJ's Step Three finding was supported by substantial evidence.

**C. RFC**

The ALJ's RFC determination need only account for Plaintiff's "credibly established limitations." *See Rutherford v. Barnhart*, 399 F.3d 546, 553–54 (3d Cir. 2005). When determining the RFC, an "ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679 (3d Cir. 2015) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an ALJ must explain the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Here, the ALJ accounted for Plaintiff's physical and mental impairments, which are discussed separately below.

1. RFC for Physical Functioning

Plaintiff claims that the ALJ's RFC determination for Plaintiff's physical functioning relied on reasoning that was "silly and . . . suggest an underlying bias," referring to the fact that the ALJ mentioned Plaintiff's strong relationships with his mother, children, and the mothers of his children. (ECF No. 9 at 21). Contrary to Plaintiff's allegation of bias, however, the ALJ only referenced Plaintiff's relationship to his family as contradictory evidence to his claim that he does not like being around people, and was discussed in the context of Plaintiff's *mental* functioning. (R. at 37).[2]

To the extent that Plaintiff contests the ALJ's findings regarding Plaintiff's *physical* functioning, the Court rejects said arguments. The ALJ sufficiently explained that Plaintiff's subjective complaints were contradicted by other evidence in the record, including but not limited to Plaintiff's ability to use a TENs unit three times a day without pain and his ability to sit, stand, and lie down without discomfort at his 2016 examination. (R. at 37–39). The ALJ further stated that Plaintiff's impairments—to the extent they were found credible—were accounted for, because the RFC incorporated Plaintiff's use of a cane and designated Plaintiff to sedentary work with limitations on, *inter alia*, bending and turning. (R. at 39). Plaintiff does not contest any of this evidence nor does he argue that there was any evidence that the ALJ overlooked. (*See generally* ECF No. 9). Accordingly, the Court finds that the ALJ relied on substantial evidence in determining Plaintiff's RFC regarding physical functioning.

---

[2] Plaintiff also points to the fact that the ALJ referenced his use of Cialis as evidence contradicting his complaints of physical and social impairments. (ECF No. 9 at 22). Though the Court agrees that this evidence was inappropriate and that the ALJ erred in relying on same in her credibility determination, said error was harmless given the other credible evidence relied on by the ALJ in reaching her decision. *See Burnside v. Colvin*, 197 F. Supp. 3d 705, 725 (M.D. Pa. 2015) (reaching similar conclusion).

11

### 2. RFC for Mental Functioning

Plaintiff argues that the ALJ improperly weighed other evidence in the record over the medical opinion of Dr. Mintzer, who diagnosed Plaintiff with PTSD, panic disorder, and schizotypal personality disorder. (ECF No. 9 at 23–24). However, the ALJ was not required to address these disorders in her RFC determination, because she had already found at Step Two that they were not severe. *See Rutherford*, 399 F.3d at 553–54. To the extent that Dr. Mintzer's examination discussed Plaintiff's severe psychological impairments, the ALJ specifically referred to same in her RFC discussion and found it at odds with Plaintiff's presentation in court and his interaction with his doctors, treating physicians, mother, children, and his children's mothers. (R. at 39). Contrary to Plaintiff's argument, (ECF No. 9 at 24), this determination was not based on the ALJ's subjective observations, but instead was based on expert opinions and other evidence in the record. One such example is the treatment records of Dr. Migroni, which "routinely describe[d] [Plaintiff] as pleasant, alert and oriented." (R. at 34). As explained above, it is not within the scope of the Court's review to reweigh this evidence or draw its own separate conclusions. *Williams*, 970 F.2d at 1182 (citing *Early*, 743 F.2d at 1007). Rather, because the ALJ addressed the evidence in the record, gave same the weight she found to be appropriate, and explained her reasoning, the Court finds that the ALJ's RFC determination for Plaintiff's mental functioning was based on substantial evidence.

**D. Step Five**

Plaintiff argues that the ALJ could not have relied on substantial evidence at Step Five based on three alleged omissions from the VE's testimony: (i) the inclusion of examinations which were performed after the first hearing; (ii) Plaintiff's opportunity to perform a full cross-examination; and (iii) the fact that the RFC and hypothetical questions limiting Plaintiff to non-

confrontational and superficial contact with others was not practical. (*See generally* ECF No. 9). The Court rejects each of these arguments in turn.

1. Post-Hearing Examinations

During the first hearing, the ALJ asked the VE "whether jobs exist[ed] in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]." (R. at 41). Plaintiff argues that the ALJ's hypothetical question, and consequently the VE's answer, omitted evidence from the subsequent examiners, because said evidence was not yet incorporated into the RFC at the time of the first hearing. (ECF No. 9 at 27). However, the ALJ specifically stated that the new evidence did not affect her RFC determination, and that Plaintiff's RFC "accommodates all of the supportable functional limitations." (R. at 38–39). The Court agrees with this assessment, considering, as discussed above *supra* III.C.2, the ALJ's RFC determination incorporated and predominately rejected the new evidence—including the assessment of Dr. Mintzer—and was found to be based on substantial evidence. Furthermore, Plaintiff concedes that the findings in the new evidence "would not necessarily make the [VE's] testimony of questionable validity." (ECF No. 9 at 27). Because neither the RFC nor the ALJ's hypothetical questions to the VE were affected by the subsequent evidence, the Court rejects Plaintiff's first argument.

2. Plaintiff's Opportunity to Fully Cross-Examine the VE

The Court acknowledges that Plaintiff has a due process right to a full and fair hearing where "witnesses may testify, and evidence may be received." *See Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). Despite this requirement, Plaintiff "is not entitled to unlimited cross-examination, but rather such cross-examination as may be required for a full and true disclosure of the facts." *Bryant v. Bowen*, 683 F. Supp. 95, 100 (D.N.J. 1998) (internal quotations and citations omitted).

Plaintiff argues that the testimony of the VE was incomplete because the ALJ concluded the first hearing before Plaintiff had the opportunity to fully cross-examine the VE, particularly regarding how the VE reached the exact amount of available sorter, stuffer, and/or information clerk jobs in the national economy. (ECF No. 9 at 28–29). However, as Plaintiff concedes in his brief, the ALJ gave Plaintiff the opportunity to submit additional questions in the form of interrogatories after the first hearing. (ECF No. 9 at 32). Plaintiff admits that "then counsel should have followed up with interrogatories," but "[t]hey did not." (*Id.*). Additionally, there was a supplemental hearing in this case where a second VE appeared but did not testify. (R. at 27). In light of the reasonable opportunity Plaintiff had to submit additional questions either through interrogatories or during the supplemental hearing, the Court is not persuaded to conclude that there was substantial evidence omitted from the record or that Plaintiff was deprived a full and fair hearing as required by due process. *See Richardson*, 402 U.S. at 405 (stating that the claimant was "precluded from now complaining that he was denied the rights of confrontation and cross-examination" when he did not take advantage of the opportunity afforded him under the regulations to cross-examine an expert witness).

3. The ALJ's Limitations to Plaintiff's Social Interactions

Plaintiff's final argument is that there was an error in the ALJ's RFC determination and hypothetical questions to the VE during the hearing, because it was vague and impractical to limit Plaintiff to jobs with superficial and non-confrontational contact with the public, co-workers, and supervisors. (ECF No. 9 at 33). The Court is unconvinced by this argument, because Courts in this Circuit have upheld similar language in an ALJ's RFC determination when, as here, said RFC was based on substantial evidence. *See, e.g., Gilroy v. Astrue*, 351 F. App'x 714, 715 (3d Cir. 2009) (upholding an ALJ's RFC determination which stated that the plaintiff's "social anxiety

limits her ability to interact with supervisors and coworkers and precludes interaction with the public."); *Harrell v. Berryhill*, Civil Action No. 16-1433, 2017 WL 2560343, at *8 (D.N.J. June 12, 2017) (upholding an RFC limiting the plaintiff to work with "only occasional contact with supervisors, and co-workers, but no contact with the general public."); *Bracciodieta-Nelson v. Comm'r of Soc. Sec.*, 782 F. Supp. 2d 152, 166 (W.D. Pa. 2011) (upholding an RFC where the plaintiff "would be limited to simple tasks, and would not be required to interact with supervisors, co-workers, and the general public in any significant manner."). Considering there were no errors in the RFC or hypothetical questions posed to the VE, and considering the ALJ specifically addressed the VE's testimony and found it "consistent with the information contained in the DOT," (R. at 41), the Court finds that the ALJ's Step Five determination was based on substantial evidence.

## IV. CONCLUSION

For the aforementioned reasons, the Court hereby affirms the ALJ's determination. An appropriate Order follows this Opinion.

Dated: November 28th, 2018.

JOSE L. LINARES
Chief Judge, United States District Court